IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:24 CR 00462 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| JOEL ALONTE TRAVIS, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel Carol M. Skutnik, Acting United States Attorney, and Michelle M. Baeppler, Assistant United States Attorney, and hereby submits the following trial brief.

**I.   SUMMARY OF THE CASE AND OFFENSE**

Joel Alonte Travis (hereinafter Defendant) is charged in a two-count indictment with Armed Bank Robbery, 18 U.S.C. §§ 2113(a) and (d) & 2, and Aiding and Abetting Using or Carrying a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. §§ 924(c)(1)(A)(ii) & 2.  These offenses occurred on October 16, 2024.

The United States intends to offer evidence of the following at trial:

On October 16, 2024, at approximately 11:50 a.m., H.C. (hereinafter 'victim') was servicing a freestanding ATM at Chase Bank, located at 14133 Cedar Road, South Euclid, Ohio.  The ATM was separated from the bank building itself and was accessible via a drive thru.  The funds in the ATM were insured by the FDIC.

Because the victim was attempting to repair the ATM, it was open. The victim was on the phone with another person from his company, who was attempting to assist him in the repair of the ATM. At approximately 11:50 a.m., two masked men jumped out of a dark-colored Hyundai Sonata and ambushed the victim. One of the masked men wielded a firearm, which he brandished, and held to the head of the victim. Both robbers wore distinctive gloves.

The robbers had trouble removing the cassettes from the ATM machine. (Cassettes hold the cash in the machine.) The robbers demanded the victim assist in removing the cassettes, which he did, given that a gun was pointed at his head. The robbers made off with five (5) cassettes, filled with cash, that all totaled, contained approximately $126,380. The robbers then fled to the waiting Hyundai Sonata. Both robbers jumped into the back seat of the car, and the car sped away. The driver of the Sonata never got out of the car.

Shortly after the robbery, investigators received information from the BOLO alert they'd issued. The information was provided by Cleveland Heights Police Department (CHPD). A CHPD officer queried the Flock camera system and was able to track the dark-colored Hyundai Sonata that carried the robbers as it fled the bank. Images of the Sonata traveling down city streets, with the corresponding times, were provided to the FBI. In essence, the Flock cameras permitted law enforcement to recreate the path of travel of the Sonata after the robbery. Real Time Crime Camera (RTCC) footage was also obtained and images of the Sonata from the RTCC were used to help recreate the Sonata's flight after the robbery.

Shortly thereafter, law enforcement queried the Electronic Monitoring system at Cuyahoga County Court of Common Pleas. The Electronic Monitoring Unit (EMU) was able to query its system to determine whether any individuals on electronic monitoring (EM) were on the premises or in the vicinity of the bank at the time of the robbery. This query yielded positive results and

revealed that defendant's electronic monitoring unit (hereinafter "ankle bracelet") was on the property, and within feet of the ATM at the time of the robbery. Defendant's electronic monitoring restricted his movement out of state, and provided a curfew of 8 p.m. Other than that, there were no other restrictions on defendant's movement.

Law enforcement officers synthesized the location data from defendant's ankle bracelet and Flock and RTCC cameras. The location data shows that defendant's ankle bracelet and the Sonata, tracked together, indicating that defendant was in the Sonata and at the robbery.

Defendant was interviewed by law enforcement officers. That interview was recorded.

## II.     CONTROLLING LAW

### A.     Armed Bank Robbery

Count 1 of the indictment charges the defendant, JOEL ALONTE TRAVIS, with Armed Bank Robbery in violation of federal law. Specifically, Count 1 charges:

> On or about October 16, 2024, in the Northern District of Ohio, the defendant, JOEL ALONTE TRAVIS, and others, by force, violence and intimidation did take from the person and presence of another, approximately $ 126,380 in U.S. currency belonging to and in the care, custody, control, management and possession of Chase Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, the defendant, JOEL ALONTE TRAVIS, and others, did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm, in violation of Title 18, United States Code, Sections 2113(a) and 2113(d).

For you to find the defendant guilty of Armed Bank Robbery, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

(A)     First: That the defendant intentionally took money belonging to Chase Bank from a bank employee or from Chase Bank while a bank employee was present.

  (B) Second: That the defendant used intimidation or force and violence when he did so.

  (C) Third: That the deposits of Chase Bank were then insured by the Federal Deposit Insurance Corporation.

  (D) Fourth: That the defendant, by using a dangerous weapon or device, assaulted someone or put someone's life in jeopardy.

Now I will give you more detailed instructions on some of these terms.

  (A) "Intimidation" is actions or words used for the purpose of making someone else fear bodily harm if he or she resists. Whether the victim was courageous or timid is irrelevant. The actions or words must be such as to intimidate an ordinary, reasonable person, and the defendant must know that his actions would be intimidating to an ordinary, reasonable person.

  (B) "Assault" means to threaten bodily harm with an apparent present ability to succeed, where the threat is intended to and does generate a reasonable apprehension of such harm in a victim. The threat does not have to be carried out.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any of these elements, then you must find the defendant not guilty of this charge.

The United States has also included an instruction for Aiding and Abetting, because defendant was charged with both Section 2113(a),(d), and 2.

  B. <u>Aid and Abet Use, Carry, and Brandish or Discharge a Firearm During and in Relation to a Crime of Violence</u>

Title 18, United States Code, Section 2, makes it a crime for a defendant to intentionally help or encourage another to commit a crime and states: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2.

Title 18, United States Code, Section 2, makes it a crime for a defendant to intentionally help or encourage another to commit a crime and states: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2.

For you to find the defendant guilty of using or carrying a firearm during and in relation to a crime of violence as an aider and abettor, the government must prove each and every one of the following elements beyond a reasonable doubt:

(1)  That the crime of using or carrying a firearm during and in relation to a crime of violence was committed;

(2)  That the defendant helped to commit or encouraged someone else to commit the crime of using or carrying a firearm during and in relation to a crime of violence; and

(3)  That the defendant intended to help commit or encourage the crime of using or carrying a firearm during and in relation to a crime of violence. The defendant intended to aid and abet the crime of using or carrying a firearm during and in relation to a crime of violence if he had advance knowledge that an accomplice would use or carry a firearm during the commission of a crime of violence. Advance knowledge means knowledge at a time the defendant can attempt to alter the plan or withdraw from the enterprise. Knowledge of the firearm may, but does

5

not have to, exist before the underlying crime is begun. It is sufficient if the defendant gained the knowledge in the midst of the underlying crime, as long as the defendant chose to continue to participate in the crime and had a realistic opportunity to withdraw. You may, but need not, infer that the defendant had sufficient foreknowledge if you find that the defendant chose to continue his participation in the crime after the defendant knew an accomplice was using or carrying a firearm.[1]

### III.  EVIDENTIARY ISSUES

#### A.  Government Agent at Counsel's Table

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.  The United States designates FBI Agent Shawn Hare, the lead case investigator, as its representative in this case to be present at counsel table throughout the trial.  Agent Hare's presence in the courtroom during trial is essential to the presentation of the government's case.  *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

---

[1] Jury Instruction 12.04 must be used for aiding and abetting a § 924(c) offense post Rosemond v. United States, 134 S. Ct. 1240 (2014).  It is error to use the general aiding and abetting instruction under 4.01.

### B. Bifurcation of Agent Hare's Testimony

The government also moves this Honorable Court, *in limine*, to permit the government to divide the testimony of Agent Hare into two segments, which will streamline the trial and avoid juror confusion.

The charges set forth in this Indictment rely on multiple pieces of independent evidence that require admission and authentication before they can be properly addressed.  Agent Hare will testify to his analysis of the electronic data, and the interview of Defendant.  This testimony naturally falls after the introduction and authentication of electronic data which will occur in the middle of the case.  However, Agent Hare also took other investigative steps that occurred later in the investigation and would not logically be elicited mid-way through the case.

To facilitate a logical presentation of evidence and not confuse the jury by introducing evidence out of order, or at a place and time where pieces of information are still missing, the United States requests the ability to call Agent Hare at the end of its case in chief.

This request is not without precedent.  In trials in this district, agent testimony has been split where the primary case agent about evidence gathered in the initial stages of the investigation and then again at some later point in the trial.  More specifically, in the trials of *United States v. Delante Lunn*, 1:16CR258, and *United States v. Russell Davis*, 1:16CR260, United States District Judges Donald C. Nugent and Christopher A. Boyko permitted Special Agent Casey Carty (FBI) to testify two times throughout the trial under the same premise as outlined above.

 To prevent jury confusion and to streamline the trial, the government requests permission to divide Agent Hare's testimony into two segments.

7

    C.    Cautionary Instruction Requested

At the time of this armed robbery, defendant was on electronic monitoring (ankle bracelet) through the Electronic Monitoring Unit in Cuyahoga County Court of Common Pleas, as a result of a criminal prosecution. Data from defendant's ankle bracelet will be used and presented during trial in order demonstrate defendant's movements on the date of the robbery. The data includes defendant's movements before, during and after the robbery.

Given this presentation of evidence, the United States requests that this Court provide a cautionary instruction to the jury that it must not consider the fact of defendant being on electronic monitoring as an indication of guilt, but rather that it may only consider the evidence (1) to explain how the data was obtained, and (2) the substance of the data.

    D.    Transcripts Of Recordings

The United States may play a portion of one telephone call at trial. It has prepared a transcription of that telephone call to assist the jury.

**IV.    TRIAL DOCUMENTS**

    A.    Stipulations

The United States and the Defendant have not entered into any stipulations.

    B.    Proposed Jury Instructions

The United States respectfully requests that the Court submit to the jury its proposed instructions that will be filed shortly.

    C.    Proposed *Voir Dire* Questions

The United States respectfully requests that the Court direct the proposed questions filed under Doc. 27 to the jury panel during *voir dire* examination.

    D.    <u>Preliminary Statement</u>

The United States respectfully requests that the Court use the Government's proposed preliminary statement filed under Doc. #28.

**IV.**     **<u>CONCLUSION</u>**

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

                                                                            Respectfully submitted,
                                                                            CAROL M. SKUTNIK
                                                                            Acting United States Attorney

                                              By:    <u>/s/ Michelle M. Baeppler</u>
                                                                   Michelle M. Baeppler (OH: 0065378)
                                                                  Assistant United States Attorney
                                                                United States Court House
                                                                801 West Superior Avenue, Suite 400
                                                                Cleveland, OH 44113
                                                                (216) 622-3995
                                                                Michelle.Baeppler@usdoj.gov