IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:24CR462 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| JOEL ALONTE TRAVIS, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Assistant United States Attorney Kristen Rolph, and hereby provides the following in support of its sentencing memorandum. The Government agrees with the calculations contained in the Final Presentence Investigation Report filed on July 30, 2025. (R. 44: Presentence Investigation Report ("PSR"), PageID 237-58). The Government asks this Court to impose a sentence at the top-end of the guideline range based on the factors enumerated in 18 U.S.C. § 3553(a). The Government is requesting the Court sentence the defendant to 84 months on Count 2, consecutive to 62 months on Count 1, for a total of 146 months incarceration. The Government submits that a sentence of 146 months properly reflects Travis's history and characteristics and the nature and circumstances of his offense and is appropriate in this case to deter Travis and protect the public.

**I.    THE OFFENSE CONDUCT**

  **A. Facts of the Offense**

On October 16, 2024, H.C. (hereinafter 'victim') was servicing a freestanding ATM at Chase Bank, located at 14133 Cedar Road, South Euclid, Ohio. (R. 44: PSR, PageID 240). The ATM was separated from the bank building itself and was accessible via a drive thru. At

approximately 11:50 a.m., two masked men jumped out of a dark-colored Hyundai Sonata and ambushed the victim. One of the masked men grabbed the victim and brandished the firearm, pointing and holding the firearm to the back of the victim's head. (*Id*.). The robbers demanded the victim assist in removing the cassettes containing the cash, which he did, given that a gun was pointed at his head. The robbers made off with five (5) cassettes, filled with cash, that all totaled, contained approximately $112,440. (*Id*.). The robbers then fled to the waiting Hyundai Sonata. (*Id*.). Both robbers jumped into the back seat of the car, and the Sonata sped away. The driver of the Sonata never got out of the car.

During the investigation officers collected data from Flock Cameras, Real Time Crime Cameras ('RTCC'), and Travis's ankle monitor. Travis was on electronic monitoring at the time of the offense that tracked his whereabouts to an accuracy of 5-15 feet. (*Id*.). Law enforcement officers synthesized the location data from defendant's ankle bracelet and Flock and RTCC cameras. The location data revealed that Travis's ankle bracelet and the Sonata, tracked together, indicating that defendant was in the Sonata and at the robbery. (*Id*.).

Law enforcement executed a search warrant at Travis's apartment and notably recovered three firearms—including one strikingly similar to the firearm used in the bank robbery. Travis posted an Instagram series of photos depicting himself and two others holding a large sum of fanned out money. (*Id*.).

This case proceeded to trial. On April 23, 2025, a jury convicted Travis of the charges in the Indictment. (R. 39: Verdict Form, PageID 208).

### B. Guideline Calculation

The Presentence Investigation Report begins with a base offense level for robbery of 20 under U.S.S.G. § 2B3.1 (R. 96: PSR, PageID 242). Two additional points are added under U.S.S.G.

§ 2B3.1(b)(1) because the defendant robbed a Chase Bank ATM, which is property of a financial institution. (*Id.*). Two additional points are added for the loss amount of $112,440 under U.S.S.G. § 2B3.1(b)(7)(C) because the loss was more than $95,000 but less than $500,000. (*Id.*). This brings the total offense level to 24. (*Id.*).

Travis's criminal history, discussed more fully below, results in a Criminal History score of one. (*Id.,* PageID 245). Defendant's prior conviction for Attempted Robbery does not score because he was sentenced on the same day as his firearm case and there was no intervening arrest. U.S.S.G. § 4A1.2(a)(2). (*Id.,* PageID 244).

Moreover, Travis committed this offense while under a criminal justice sentence. (*Id*, PageID 245). He was under a criminal justice sentence for Cuyahoga Common Pleas Court case numbers CR-23-685253-A and CR-24-691683-A. (*Id.*). However, since Travis had less than seven criminal history points, no additional points were added under U.S.S.G § 4A1.1(e). (*Id.*). As a result of the one criminal history point scored, Travis is a Criminal History Category I. (*Id.*). Using this calculation, Travis's guideline imprisonment range for Count 1 is 51-63 months. (*Id.,* PageID 250). Count 2 carries a mandatory minimum term of imprisonment of 84 months or seven years that must be imposed consecutively to the sentence imposed for Count 1. (*Id*). The Government is requesting the Court sentence the defendant to 84 months on Count 2, consecutive to 62 months on Count 1, for a total of 146 months incarceration.

## II.     SENTENCING FACTORS

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which states:

> This Court is required to consider the following factors in determining the sentence.
>
> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to

comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(5) any pertinent policy statement--

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

§ 18 U.S.C. § 3553(a).

**A. Travis's history and characteristics support a high-end Guideline sentence.**

Travis's dangerous and escalating criminal history supports the government's request for a high-end Guideline sentence. The offense for defendant's first conviction for Attempted Robbery occurred on April 18, 2023. (*Id*, PageID 244). Four charges, including Aggravated Robbery, were dismissed at sentencing. The specific facts of this offense are unknown; however, Attempted Robbery is inherently dangerous to the community.

Approximately six months later, on October 5, 2023, defendant committed several additional crimes. Travis was driving a vehicle that law enforcement attempted to stop for a traffic violation. Instead of complying with law enforcement, Travis fled on foot carrying a backpack. (*Id*., PageID 245). Officers deployed a taser and as Travis was falling to the ground, he threw a firearm into a nearby yard. (*Id*.). The backpack also contained controlled substances and a digital scale. (*Id*.). Ultimately, Travis was convicted of: Having Weapons Under Disability, Carrying Concealed Weapons, Drug Possession, and Obstructing Official Business. (*Id*.). A year later, on October 16, 2024, Defendant committed the instant violent bank robbery. Travis committed all this criminal conduct in a short period of time, roughly a year and a half.

Defendant's criminal behavior is dangerous and escalating—proving to be a great concern to public safety. Defendant has prior convictions for Attempted Robbery and Having Weapons While Under Disability—here he has blended the two by committing the instant bank robbery with the violent use of a firearm. Certainly, demonstrating that Travis's criminal behavior is escalating in dangerousness. Further, he committed this violent robbery in broad daylight, another indicator that the Defendant's criminal behavior is escalating. This is an inherent public safety concern and justifies a high-end Guideline sentence.

Travis also continues to show a lack of respect towards court orders and established laws. He was sentenced to 18 months of probation on September 18, 2024, and as a condition of probation was placed on an electronic monitor. He violated his conditions one month later by committing the instant violent bank robbery, having three firearms in his apartment and by leaving the state.

In sum, Travis has demonstrated a history of committing violent crimes, using weapons, and simply refusing to comply with supervision or rules placed upon him. This pattern

demonstrates he has not been deterred from committing violent crimes or possessing firearms. This provides an appropriate basis for the Court to impose a high-end Guideline sentence.

### B. The Nature and Circumstances of the Offense also warrant a high-end Guideline sentence.

The nature and circumstances of the offense also warrant a high-end Guideline sentence. Travis and two other individuals violently robbed an ATM technician by grabbing him and pressing a gun into the back of the victim's head. Defendant and the robbers held the gun to the back of the victim's head the entire duration of the robbery, until they successfully removed the cassettes. After the robbers fled the scene, the victim appears in the video visibly shaking from the encounter. Further, this brazen conduct occurred around noon, in the middle of the day at a bank open for business. This conduct is inherently dangerous and put the public at risk. In addition, Travis committed this offense only a month after being placed on probation and electronic monitoring. (*Id.*, PageID 245). Due to the circumstances of this offense, the government's request for a high-end Guideline sentence is reasonable.

The Court should consider Travis's criminal history and his escalating behavior when determining his sentence. To reflect the seriousness of this offense, to promote respect for the law, to provide just punishment, to adequately deter the defendant, and to protect the public, the Government respectfully asks that this Court impose a high-end Guideline sentence of 146 months total incarceration based on the factors provided in 18 U.S.C. § 3553(a).

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Kristen Rolph
Kristen Rolph (MI: P75375)

Assistant U.S. Attorney
208 Seiberling Federal Courthouse
Two South Main Street
Akron, Ohio 44308
(330) 761-0525
Kristen.Rolph@usdoj.gov